We'll hear the first case on calendar, which is Continental Casualty v. Bowden. Thank you, Judge Jacobs. I'm John Schreiber. I represent the appellants, and if it would please the court, I would like to spend most of my argument referring to the jury charge argument and, at the end, the rescission argument. This court has repeatedly held that when a jury charge improperly instructs the jury on who must prove what to establish liability, the error cannot be harmless because, if I may quote then-judge Sotomayor in the Gordon case, quote, it is not harmless error because it goes directly to the plaintiff's claim and a new trial is warranted. That rule of law was followed in this court's decision in the Tara Firma case, when the only error addressed was that, quote, the instructions incorrectly shifted the burden of proof from city to Tara Firma on the reliance element, and that was enough to require a new trial. In this case, the instruction was wrong both as to the who and as to the what. First, the charge held that the interveners had the burden, even though New York law follows the rule that in this court's decision in the Ballow-Brasted case, this court overruled that part of the Allen case, which held that there were exceptions to this rule, and then found that the rescinding party did not meet its burden. And I should point out again, as we did in our papers, that when we pleaded failure of prompt action in our answer, and this is at page 343 of the appendix, we stated, quote, that the pleading of the failure by Continental as an affirmative defense is without prejudice to intervener's position that the law holds, and I'm still quoting, that the burden of proof and persuasion on prompt action is borne by the plaintiff seeking rescission. Well, the jury didn't seem to think it was a close call, because when the jury was asked whether there was a problem with that, they not only said no, but they capitalized both letters of that word, and they followed it with an exclamation point. Well, as Judge said in the Terra Firma case, it is unknowable what the jury would have done, but we have the other impediment here, which is that the what prong was wrong, too. So obviously, if the what prong is wrong, you may have an explanation for the jury's outcome that goes beyond the who point, but again- What is in the what prong? Okay, in the what prong, and I would refer again to the Ballot-Brasted case in footnote four, which is where that really lies, the court held that the rescinding party could not later claim a later trigger date than when the rescinding party first articulated a belief in a fact that, if true, would make it aware of the misrepresentation. The court did not reach the issue of whether the belief or the fact was actually true, or whether it was clear. It looked only to what the rescinding party claimed to believe at the time, that's footnote four in that case. And in this court's later decision in the Salomon case, this court held that the filing trigger date could be no later than when the insurance company issued a position letter, stating its position that certain application statements constituted misrepresentations, even if it were true that the insurer only had minimum facts supporting that position. And these decisions are consistent with the Rule 11 approach to when filing a rescission suit is first justified. But the trial court rejected that standard in what I call the what prong, and held that because rescission is a drastic remedy in an insurance case, the trigger is when the rescinding party's factual and legal basis for the rescission is when the insurance company has hard evidence justifying rescission. And further- It's within an objection at the charging conference to Continental's desire to add one additional sentence. This isn't something you raised with the district court. We did, we did judge Livingston. We did in several ways. We raised it in a motion for summary judgment. We also raised it in a subsequent in limine motion, where we said the Rule 11 standard would have to govern in determining the trigger for prompt action. And all of those things, all of those arguments were rejected, making it moot to pursue it further. At that point, the court had already decided it. And we've cited cases from this court holding that we don't have to, under the appropriate federal rule, raise it again having it rejected already once as a substantive matter. And there's another part of the prong of the charge that I want to talk about. And that is that the court charged that the clock keeps ticking to allow reasonable time for determining whether rescission is necessary and appropriate based on the insurer's consideration of the profitability of rescission. We objected to that prong of the charge. And again, it was the court's bench ruling in 2015, and it rejected our position. And our objection to that position, I should say, is at 2914, 3028, and 3031. And the court's statement that profitability is a consideration that the insurance company can take into consideration and should be given a reasonable time for is at page A2757. We cited the Serenitides case at 2914 in the appendix for the proposition that profitability determination is not something that should be afforded a reasonable time. What's the evidence that was before the jury that considerations of profitability caused some delay? There are memos that went back and forth from Ms. Overton to her supervisors discussing the relative profitability of standing on the claim for his rescission, they were both based on the same fact. And they equated that and looked at it, evaluated it, and ultimately determined that it would be more profitable to go the route of rescission than it would for standing on the contract because of- That involves financial issues such as the refund of the premium and so on. Yes, refund of the premium, also the extended reporting period. All of those things would require some out of pocket if in fact the insurance company were going to go the rescission route. As opposed the other route, there'd be a refund and the like. You'd have to hire counsel, you'd have to bring a case. Obviously, if you deny coverage, you don't have to do anything, you just have to issue a letter. So there's obviously more expense involved and they spend- If you deny coverage, you still have to provide a defense until you can establish that you don't have coverage. They could deny a duty to defend and they could say that the duty to- That's pretty dangerous. It may be, but it doesn't cost you anything. So they decided to go the more- It doesn't cost you anything at the front end. That's true. Continental cites a few cases on the who point. Judge, I just want to point out to the panel that the Kreitzer case, which they rely on. I'm sorry, the Master's Meats case, which Judge LaValle decided is not a prompt action case. It's a ratification case. But in any event, the case is decided based on the fact that the insured failed to rebut evidence that was put forward on a motion for summary judgment by the insurance company. That was the burden that was not met in that case. The fact on ratification, I just want to be clear. Simply put, Continental was relying on the same believed in fact of a misrepresentation to resist payment under the policy that it relied on to file rescission seven months later. It had made an election based on that belief. The doctrine of ratification precludes that. And contrary to Continental's suggestion, that we did not raise that below in our summary judgment opposition. That is at ECF 85 at page three. And I see I only have a few. What page of the appendix? It is at page, it's not in the appendix because it's a brief where we raise the argument. The- How would we find this? It's on the PACER ECF 85, it's a brief. And the briefs, as I understand, don't go into the appendix unless the argument of waiver is made? Yeah, but we do have it. What's the page number? It's at page three, and I would also note that there's a footnote in that same brief that incorporates, by reference, the arguments that have been made in our own cross motion that preceded that. It's there, and it's in black and white. The argument was certainly not waived. You've reserved a couple minutes rebuttal. I have. We'll hear you then, Mr. Schreiber. Thank you. Thank you, Judge Jacobs. Good morning, may it please the court. My name is Richard Simpson. I represent Continental Casualty Company on this appeal, as I did below at the trial. I want to go immediately to this issue of the jury instructions that Mr. Schreiber addressed. And to start in particular with the burden of proof. To begin, Judge Seibel got it right. The burden of proof, this is a defense. There's not a single New York case the other side has cited or we're aware of that states prompt action is an element of a claim for rescission, as opposed to a defense. The cases that have talked about who has the burden of proof in New York in an insurance case, all refer to it as a defense, and to the extent they address burden, they put it on the defense. Wouldn't it be natural, however, for the party that has the information that bears upon the issue, to bear the burden of proving the point, which would be your client? I think in rescission cases, generally, the information isn't necessarily. In fact, we had to do an investigation to get the facts here. That's right, because you know why it took seven months. Your adversary doesn't know. Yeah, but it's like, I don't see a way in which, I guess it's a case by case answer, depending upon what the nature of the facts are in dispute. Waiver is classically a defense. For all of those reasons, and the Third Circuit recently noted that under New York laws, the defense in the insurance context, the cases that indicate it's an element, prompt action is an element. It's a matter of state law. It's a matter of state law. The cases that they rely on, as Judge Seibel pointed out in her oral decision, were not in the insurance context. So she got it right, but I also want to make clear that this issue was waived. When you're preparing for oral argument, you go back and read the entire record, and sometimes things come through even more clearly than they did previously. And if you look here on this burden of proof issue, as we pointed out in our brief, the judge decided the issue, so to speak. She issued, gave her view of the right answer in an oral decision on cross motions for summary judgment on the issue that ultimately went to trial. If you read the transcript, it's apparent that the burden of proof did not change the outcome. She was going to deny summary judgment either way. She also, in that transcript, explicitly said, she said, you need to be here for a while. If you're not going to order the transcript, take good notes. I'm going to give you this information about my views, as I think it'll be helpful. But of course, I'll hear from you before I charge the jury. So she invited, come on back if you want to. The thing that jumped out at me in reviewing the record was not only was burden of proof clearly not something that the judge viewed as necessary to decide to decide summary judgment. It wasn't even fully briefed. If you go back to the briefs, these are cross motions for summary judgment. So both sides filed motions. ECF 112 was our brief. We addressed burden of proof in a footnote only and said it doesn't matter to the outcome. If you look at their opening brief, that's ECF 118, there is one sentence on burden of proof citing one case. If you go to our response, which is 119, again, it's a footnote and it says essentially the same thing as our first brief, which is they have the burden but it doesn't matter. And if you look at their response, it's two sentences that cite four cases. That was the extent of the briefing on burden of proof, which led to the judge giving her view of the right answer, which is right. But inviting further debate. The other thing I wanted to emphasize, because our brief noted that there was no objection at the time of the jury charge, which is a waiver. But that wasn't the only time to object. I mean, it's already been argued. I mean, the judge doesn't have to be, not to stick pins in the judge. Once the judge has decided an issue that's been argued and then says, this is my charge, you don't have to raise it all over again. Yeah, exactly, your honor, the standard, I think, has to be if it's futile, you don't need to. That's correct. If it's clearly futile. As I said here, Judge Seibel, when she issued the decision, it was clearly dicta and she invited further debate. And the key point is, you didn't have to wait until the end of trial and the jury charge for the further debate. Both sides filed multiple motions in limine. And Judge Seibel held a long hearing on those motions. That's in the appendix at A 3057 to 3122 is the hearing. They filed motions and argued vigorously for her to change her mind about this rule 11 and what is the standard issue. But they didn't say a peep about the burden of proof. And it came through in reviewing the record why they didn't say a peep. Strategically, they were better off having the burden of proof. Better off, they had a better chance to win the case having the burden of proof than not having it. And the reason is that this was an unusual situation where the only issue left in the case was this defense. And so because they had the burden of proof, they got to go first. And the only witnesses were our employees. The critical witness was Kelly Overman, who was the person, the lawyer who took charge of the investigation. Because they had the burden and went first, Judge Seibel required us to produce her for them to call as an adverse witness. And they, the entire first day of trial after jury selection and opening and into the next day, they got to cross examine before we had an opportunity to ask her questions. If we had had the burden, of course, we would have put her on and introduced her. So I'm just making sure I understand the record, I think I do, but correct me if I'm misunderstanding it. It is clear that after the decision on the summary judgment motions, she says I'd like to take this opportunity and she gives both of you her initial thinking about how she's going to instruct the jury. And it's clear from the record there, she says of course, I will of course hear from the parties on what to charge the jury and would see how the evidence develops. Yes. And your point is that after that, there's no further discussion of burden of proof. No motion to eliminate, no objection to the allocation of burden of proof as she initially stated it. That's exactly right, Your Honor. What they did from that point on was simply, for example, on jury instructions, they submitted an instruction that gave them the burden of proof and dropped a footnote and said, but we don't agree with you. And to me, it's clear as day, strategically, it's better to put that appeal issue in your back pocket and go forward to trial where you get to call the witness first and you're better off and have a better chance to win. And the thing I wanted to emphasize, too, I mean our brief focus to some degree- They didn't drop the footnote saying we don't agree with this? Yes, they submitted an instruction. They didn't submit an instruction putting the burden on us, and they didn't submit a motion asking her to put the burden on us. They put in a jury instruction that said, we have the burden of proof and dropped a footnote and said, we're doing this because of your prior ruling and we don't waive it. But even submitting a jury instruction in this court as hell doesn't preserve an issue. And certainly putting in a jury instruction the other way and dropping a footnote and not arguing doesn't. And the key thing on this, the waiver point, is futility. Because as I was saying, our brief talks in some detail about the objections not objecting at trial. But the other key point we mentioned, but I want to emphasize more, is this hearing that the judge held on multiple. There were at least seven or eight motions in limine. And a real effort on their side to change her mind about what she had said in these tentative rulings about rule 11. Frankly, the only way they have a chance to win the case is to convince someone that Continental had a duty to act as soon as it wouldn't be sanctioned if it filed a lawsuit. And Judge Seibel said that's not right. As a matter of law, there wasn't enough on November 1, 2010 when they issued the letter to go forward. Opposing counsel said, Judge, does that mean you're not going to let us argue it? And she said, you can argue it. The exact quote is, I think if Continental came into court with what it had then and sought rescission, it would have been laughed out of court, but you can argue it. They tried very hard to change her mind. But didn't Continental take the position then that it had the right to rescind? Not as of that date, no. Well, let me put it this way. Our witnesses testified that as of November 1, they were reserving their rights to rescind. They were investigating, but they certainly did not think they had a basis to go forward or would ever go forward, effectively joining with the claimant to accuse their insurer of misconduct. No, whether it was a rule 11 basis, you wouldn't be sanctioned if you filed a lawsuit, I think it's a different question. They never thought they had enough to go forward at that point. And that testimony was very clear and obviously accepted by the jury, because as you indicated, Judge Jacobs. They came back in an hour having had lunch with a no exclamation point. I see my time is up, unless there are further questions. Thank you. Thank you. Mr. Schreiber. Yes, Judge Livingston, afterwards there was a footnote drop that incorporated by reference. This is at page A2889 of the appendix on the burden on the who issue. With respect to whether or not the judge actually made a finding on this, I refer the court to page A2748. I find, the judge said, plaintiff's position to be more persuasive. That was in the December 2015. She spends two pages on the issue of, quote, the parties disagree as to who bears the burden of proving evidence of either the existence or absence of unreasonable delay. She cites the cases we cite, she cites the Baraki, the Arabi decision, which holds that it is an element and that the burden is on the insurance company. With respect to the issue of the what issue, I think Mr. I think Continental stated that we took the position that the duty to act happened the moment that rule 11 would have allowed for a lawsuit. That's not true. We took the position that you have to measure the delay period from the earliest possible moment that you could bring a lawsuit. And that's the beginning of the measurement of the delay period. By postponing the commencement of the delay period until there was more than the minimum, until there was clear, hard evidence, they truncated or postponed at least the delay period and then added to the end of that the reasonable and necessary determination by the insurance company based on its own profitability. So that also is the case. With respect to the argument that the judge made findings or that Continental didn't have enough or didn't have evidence in front of it of any kind on November 1st, I refer the court to page 2734 of the appendix, where the court says they had the November 1 letter, it denied coverage. That Continental's stated basis for that denial was that Brown had misappropriated client investment funds before the policy's effective date. That the documents filed by the SEC were the support, this is the judge speaking. And further, that that same believed in fact, based on that same evidence was the basis for its rescission case, seven months later. Thank you. The court has further questions, I can answer. Thank you both. Thank you. We will reserve decision.